The special verdict is framed with a view to obtain the judgment of the Court upon the question whether the defendant committed a nuisance by erecting, (447) on 2 July, 1821, a toll gate across a public road leading from Asheville to the South Carolina line. The solution of this question depends upon the construction of five several acts of Assembly, passed at as many sessions, from 1809 to 1814, inclusive. The merits of the case cannot be understood without an examination of those acts, but I think a very brief one will suffice. The first section of the first act authorizes three persons, viz., Murray, Greer and Kyrkindall, to open and repair the road from Buncombe Courthouse, over the Saluda Gap, to the South Carolina line, and to keep it in repair, under the direction of certain commissioners. The second section appoints those commissioners, seven in number, and invests them with power to lay off and superintend the road, and to direct the manner in which the same shall be repaired. It further provides that, when the road shall have been completed to the satisfaction of the commissioners, or a majority of them, then, that Murray, Greer and Kyrkindall may erect and keep one or more turnpikes on the same, or such places as the commissioners may agree upon, for a term not exceeding ten years. The third section authorizes the County Court of Buncombe, at the next court after the road is completed, and so certified by the commissioners, to establish the rates of toll to be received during the time of the grant. It also gives to the County and Superior Courts of that county the same jurisdiction over the keepers of the turnpike roads as they *Page 242 
possess over overseers. The fourth section imposes upon the commissioners the duty of making a return to each County Court of the state of the road; and the fifth section protects the gates, the toll and the road. Under this act, the commissioners reported in the manner stated in the special verdict, and it is not doubted that the grantees obtained a title to the turnpike for ten years, the time specified. The act of 1811 was passed for the (448) purpose of changing the commissioners, which it did, giving to the new ones the same powers which were possessed by the former ones. The act of 1812 authorizes the grantees to extend the turnpike road from the north end of Big Mud Creek bridge to Samuel Murray, Sr.'s, old place. The second section changes the commissioners appointed in 1811, and, when the turnpike is extended, authorizes the new ones to determine the additional length of time which the proprietors shall retain the same, and the profits arising therefrom, in consequence of such extension, and to report the same to the next General Assembly. The commissioners performed this duty, and made a report accordingly, in which they recommend an additional twenty years to be added to the ten first allowed. This report was made to the General Assembly at the session of 1813. It is under this act of 1812 that the question arises, it being contended for the defendant that everything was done by the proprietors necessary to entitle them to the extended time, and that there is no ground on which to infer that the Legislature meant to deprive them of it. To this the answer appears to be that the Legislature, had they been so disposed, might have made the determination of the commissioners final, effectual to vest an additional right in the proprietors. They had so done in the act of 1809; but the commissioners appointed under the act of 1812 are directed to ascertain the profits arising from the road in consequence of the extension; and, though they are directed to determine the additional length of time, yet it is evident that such determination was not intended to be final, since they are to report both that and the profits to the next General Assembly. It was a preparatory measure, directed by the act for the purpose of enabling the Assembly to decide, upon a full view of the whole ground, whether any, and what, extension of the charter should be made. If the commissioners were to have acted finally on the subject, their report to the Assembly would have been perfectly (449) useless. It was for the proprietors to determine whether they would extend the road, according to the first section of the act, and trust to the hope of the charter being enlarged. The public faith is in no degree pledged that it shall be; and in this sense it must have been understood by the commissioners, *Page 243 
for they recommended an extension of the term, urging reasons from the expensiveness of the work on the new road, and its advantages to the public, wherefore it would be just. But it did not appear in the same light to the General Assembly; for, at the very same sessions that the report was returned, they annul the powers of the old commissioners and appoint new ones, with different powers, which, however, were not exercised, in consequence of the commissioners refusing to act. In the subsequent law of 1814 there is nothing whence an argument can be drawn in favor of an extended term; and the case settles down to this, that as the report of 1813 was not confirmed, the proprietors have obtained nothing beyond their original charter, which having expired at the time when the offense is charged to have been committed, the defendant is, in point of law, guilty, in the manner laid in the indictment.
Cited: S. v. Godwin, 145 N.C. 464.